Oral argument not to exceed 15 minutes per side. Ms. Schroedering for the appellant. Good morning. Good morning. I'd like to reserve three minutes for a rebuttal. Okay. May it please the court. Precise questions require precise answers. And this case presents two such precise questions. The first question asks whether a state court acted unreasonably in concluding that suppressed lab notes were immaterial. And given the fact intensive nature of this case and the fact that this is a fact intensive inquiry, the state court did not act unreasonably. And if the court agrees with this, then there's no need to answer the second question, which asks whether Rule 60B can be used to materially amend a judgment after habeas jurisdiction has dissolved. I would like to begin with the first issue. There are two points I would like to make here. First of all, the state court decision that is relevant to this appeal is the first district's. And that court did not apply any rule contrary to a Supreme Court holding and did not unreasonably apply Supreme Court precedent. Did the court do a Brady analysis? Yes, it did. In order to reach the ultimate conclusion, the court did do a Brady analysis, stated the rule correctly, and concluded that the lab notes were immaterial. As to the second point, once again. What's your best case for this very unusual situation where the merits inquiry is done through the lens of ineffectiveness? What's your best case for saying ideally a U.S. Supreme Court case for saying that counts as the relevant Edpa state court decision? Well, first I have a case for this court, which is Davey v. Mitchell. And in that case, the court stated that counsel cannot be ineffective for failing to raise a claim if that claim has no merit. Well, that is the exact track that the first district took. But in order to address whether or not there was a colorable and effective assistance claim, the court looks to the underlying Brady claim. And we see a similar analogous situation in Smith 1, where this very court did look to the Brady claim in order to assess cause and prejudice as to the ineffective assistance of counsel claim. So the fact that there's an analogous method of reaching that, the fact that this court has stated that strickling claims can be seen from the lens of the merits of the underlying claim, it is not wrong to state that the first district did correctly do the Brady analysis in order to reach its conclusion. And I just want to point out that materiality, which is really the crux of the Brady issue, is an extremely flexible and fact-intensive standard. And we have a case here where we have multiple sources of evidence that counseled in favor of Mr. Smith's guilt at trial, separate and apart from the DNA evidence that is disputed post the lab notes being discovered. As I mentioned when I opened, if the court agrees with this analysis, then the cross-appeal becomes moot because the court could reverse in our favor. However, there are two points I do want to make with respect to the cross-appeal. And each point... That's correct, Your Honor. However, that is a de novo review in that the court was trying to determine whether or not there was an error. But at this point of the proceedings, we're engaged in EDPA review, which means we're not asking here whether the court was wrong. We're asking whether the court acted unreasonably. And that's a very, very high standard. It has to be beyond fair-minded disagreement that there was an error. And it is hard to see how it could be beyond fair-minded disagreement, especially given the nature and fact-intensive inquiry present in this case. Well, the DNA evidence that was not produced earlier suggested that someone else committed the crime, right? Allen, not Smith? It did add to that inference, yes. However, what was known at trial and what was discovered with the lab notes, the lab notes only give us an additional limited inference. At trial, it was known that Allen's DNA was likely on the wig and that Mr. Smith could be excluded. Now, the lab notes only give us one small step further, which is it is likely that Mr. Allen wore the wig. But it is unclear when he wore it, for how long he wore it, and in what order people may have worn this wig. The theory was that Smith was wearing the wig during the act, during the robbery, right? That's correct, Your Honor. But his DNA is not found on the wig. And then the notes from the lab sort of confirmed that, right? And suggested it was someone else who was wearing the wig. It did not confirm it, Your Honor. As the expert testified, the lab notes could not say whether or not Mr. Smith had worn the wig. All it could say was that Mr. Allen had likely worn it at some point. However, even when questioned and pressed on it in the post-conviction hearing, the witness was reluctant to state on the record that the lab notes did not say that Mr. or did say that Mr. Smith had not worn the wig. That inference simply cannot be made from those lab notes. Is it fair to say, though, that this is the only wig that was used in the robbery? Because, I mean, we have this other eyewitness who's very helpful to your case. And he says he sees these three items. Those three items are found. So I know the girlfriend had lots of wigs, but isn't the wig that was used in the robbery have to be that wig? The one with the lab notes. I think that's right, Your Honor. It was the wig that was found. I apologize if I misled the court. I'm not saying that it was not that wig that was used in the robbery or that the lab notes suggest that it was not the wig that was used in the robbery. I'm simply pointing out that the lab notes. What happened? I mean, how did this happen, I guess, is the question. I mean, he gets out of the ‑‑ he's done with the robbery, and he says, hey, you put the wig on for a little while. I mean, how did this happen if he wasn't the guy who went in? Someone went in with a wig, right? That's what the eyewitness is saying. That's correct. So if you believe that, just how does it happen? Well, I can't stand and speculate beyond what's in the record as to what happened. However, the record does indicate that there were at least two robberies within the same block within a 15‑minute time interval during which a wig, a similar wig, was likely worn. The trial judge did point to that as a possible alternate theory for when that wig could have been worn by Mr. Allen in the perpetration of the crime or perpetration of two crimes. Beyond that, it is hard to speculate, standing here, how or why the DNA evidence came out the way it did. However, bringing it back to what question is before this court, it is whether or not the state court was unreasonable in its determination. And I want to point out that there were four additional sources of evidence that was looked at during the trial. There was the eyewitness testimony, which was considered very credible. There was the fact that the car used was Mr. Smith's. There was the fact that his ankle monitor was not working at the time of the crime. And there was immense amount of post-robbery, incriminating text, and inconsistent statements. Is this case entirely deterred on whether that pedeference applies? In other words, if we think that the state court appeals decision you're pointing to is not the last reason decision, maybe we think it's the trial judge's decision. Yes. Do you think that's wrong? So if we don't apply a pedeference here, do you lose? It would be unreasonable for me to stand here and say that we don't lose on that, especially given that Smith won. Is that saying yes? Yes. I mean, given that Smith won did state that likely there was an error. However, it is not an unreasonable decision of the state courts. And there's at least two state courts that disagreed. And I think that that really pounds in the fact that deference attaches, and this is an area in which it is not beyond fair-minded disagreement that an error has occurred. Can I ask one other question? Just trying to figure out how ineffective assistance works with a Brady claim. So if you have an ineffective assistance decision where it decides there's no prejudice, does that always mean the Brady claim goes out? I mean, couldn't you have Brady claims that turn on other things, like maybe it was unclear the duty to produce it? Maybe there was a debate about whether they already had it. Does it always necessarily lead to a ruling on the merits of the Brady claim, or is it just this case where you have the analytics of the state court of appeals saying the Brady claim is flawed because the evidence wasn't material? No, I think there must be some wiggle room between the underlying merits of the claim and whether or not counsel is ineffective. However, as the district court itself noted, most of the times Strickland claims rise and fall with the merits of the underlying claim. And if you agree with us and reverse here, then it would be very difficult to say that counsel was ineffective for failing to raise a claim as to which there is. If I'm understanding your answer, your answer does turn on how the state court frames its assessment of the prejudice inquiry and ineffective assistance. I think that's right. Yes. If we rule in your favor here, is this incompatible with the previous decision in this case and this court? No, not at all. As I mentioned earlier, that was a de novo review, and Smith one specifically stated that it was doing a de novo review and remanded for that particular reason, which is why we are here today, or else that would have been a foreclosed question. I see I'm limited on time. I would like to turn to the cross appeal, which, as I mentioned earlier, if this court reverses in our favor, does get mooted. There's two independent reasons for why this court, if it reaches the cross appeal, could affirm in our favor. First of all, there's simply no extraordinary circumstances present here to warrant a bond retrial. And second, Rule 60B is not the appropriate vehicle to get affirmative relief, especially after habeas jurisdiction has dissolved. Put another way, it cannot be used to materially amend a judgment after habeas jurisdiction has ended. If there are no further questions, I reserve the rest of my time for rebuttal. All right. Thank you. Ms. Berry? Morning. Thank you, Your Honors. Good morning. May it please the Court, my name is Michelle Berry, and I, along with the Ohio Innocence Project, represent Christopher Smith, who joins us here today in this appeal. Your Honors, Christopher Smith is innocent of these crimes. He spent nearly 13 years wrongfully imprisoned for these crimes, and the Southern District issued an unconditional writ of habeas corpus, which this court should uphold and bar retrial. Of course, we're not going to address the retrial bar issue first. I'm going to address how we get to this court upholding the writ of habeas corpus. And this is a question where you can get bogged down in a lot of these technical questions. Which court do we look to for whether there was, which court gave the last reasoned opinion? Was there an adjudication on the merits? Well, there's actually a very simple, short answer to this question, and that deals with law of the case. I think your questions were hinting at that, and the report and recommendations by Magistrate Judge Merz gave a good discussion of law of the case at page ID number 3291 to 94, which the district court ultimately adopted and took a step further. So, law of the case, I mean, there's a lot to that point, but just the threshold question before you got there would be, isn't the prior panel decision de novo review, and isn't what the state asking for here at per review? So, I'm pretty confident law of the case doesn't apply when different standards of review apply to an inquiry. Well, ultimately, whether you are applying de novo review like the magistrate judge did in the report and recommendations, or ADPA deference like the southern district ultimately did looking to the state court decision, you still have these specific findings from Smith-Wan that shape even the ADPA review. And if you look at what those specific findings are, there's five key specific findings. So, you're making the point, I just want to get the approach you're taking. Is the approach you're taking that ADPA doesn't, whether ADPA applies doesn't really matter because there's findings from the prior decision as well as other required findings from the evidence that would show that Smith-Wan's either way, whether ADPA applies or not. Is that the theory you're advancing right now? That's exactly right. I mean, there's a long flow chart. So, let me just, if that's the theory, you know, the idea is actual innocence. I'm struggling pretty, I have a lot of struggle with the idea that your client was not at the scene of the crime. That seems to me quite implausible and given the eyewitness testimony and everything else in the case. And the Whig doesn't do anything with that. So, when you say actually innocent, do you really mean Smith was not involved in the car at the day of the robbery with Allen? Is that what you mean? I do mean that, but there's two things to that point. First of all, we're not looking at a schloop actual innocence standard. I'm just responding to how you started the case. Okay. Well, I didn't mean to get things off track with that. Okay. I was merely doing it. You're saying he's innocent. Innocent of what? Of? Not being at the scene of the crime? Well, correct, Your Honor. And if you look at what Smith 1 said to that point specifically, Smith 1 said, there's no evidence in the record whatsoever that he was involved in the crime in any other way as an aider or a better. That's what Smith 1 said. So, that's actually one point as to law of the case. But if you're looking at... That was on DeNovo. Correct. But if you were looking at do we uphold this writ and does DeNovo review apply or EDPA review apply, even if you were applying EDPA review, that inquiry is shaped by the law of the case. And if I could explain five different specific points that Smith 1 found that are involved in the EDPA review, I can demonstrate this. The first point being, in Smith 1, the court found that the Brady evidence undermined the confidence in the outcome of the trial. Smith 1 found that there was a reasonable probability of acquittal had the Brady evidence been considered under the correct standard. The Brady claim was significant and obvious. And it directly undermined the fact finder's theory of guilt. And five, regarding Brady itself, the Brady standard is an objective one, not a subjective one. What was the prior panel doing in sending it back to the district court to decide these questions? Well, the issue that was certified for appeal in Smith 1 did not involve the merits of the Brady claim itself. It was only a threshold question of can we get to the Brady claim because it had been procedurally defaulted. So if you look at what Smith 1 did, of course they did find that ineffective assistance of appellate counsel broke through the procedural default and provided cause and prejudice. And in doing so, in making these findings that I just outlined, these five specific findings, I like to think of it as they drew dots and they remanded it back to the southern district to connect the dots because they didn't want to go beyond what was certified in the certificate of appealability. They couldn't reach the merits of the Brady claim, but they did address every element of Brady. Are you saying we're foreclosed then from reaching the AEDPA question, whether we should apply deference to a state court decision? No, I'm not saying that. The district court did that. It found there was a last reason decision. It was the trial court decision, I think, right? Yeah, the district court did apply AEDPA review. You're not saying we're somehow foreclosed from doing that ourselves? Absolutely not. And we're not foreclosed from thinking that it might be? Your friend on the other side says it should be the trial court of appeals decision. We're not foreclosed from looking to that decision, are we? Well, let me unravel this. This court, no, first off, this court is not foreclosed from applying an AEDPA review. What I'm saying is even if this court applies an AEDPA review and you look at these points of the law of the case, that shapes the analysis. Because when it comes down to it, you're looking at, whether you're looking at what the first district said or the state trial court said, because that's a technical question and I can get into that and I will. But the prior panel was a little more focused on the state trial court. Am I right about that? Yeah. And I can explain why even if it's the trial court or the first district that you're What did the prior panel say about the court appeals analysis of the ineffective assistance and whether there was prejudice? It didn't answer that question, did it? Wait, your question is, did the prior panel answer the matter? The law of the case, do you think we're bound, that hems us in or requires us to rule in your favor? What did that panel say about the issue that's effectively before us today, which is whether the state court appeals determination on ineffective assistance, whether that was a resolution of the Brady claim? Did they answer that? No, because the question of the Brady merits was not before the court in Smith 1. They were simply looking at, is there a way That seems pretty significant to me because that's the question before us today. No, that's not the question before us today. Because Smith 1 remanded it back to the district court to specifically address the merits of the Brady claim. When the district court addressed the merits of the Brady claim, they used the law of the case from Smith 1 to guide their analysis because Smith 1 gave findings on each element of the Brady claim. Now, I'm not saying that this court can't apply an ed per review. What I'm saying is whether this court looks to the first district language for an ed per review of their one sentence about Brady or whether they look to the state trial court like the southern district ultimately did in resolving the merits of the Brady claim doesn't matter because even the ed per review is shaped by the law of the case in Smith 1. And what I mean by that is you're asking under the ed per review, is it contrary to Brady what the first district ruled, for example, or what the state court ruled? And let's look at what the first district ruled, for example. I disagree that that's an adjudication of the merits, but that's a separate question. Let's just say it is. It ultimately doesn't matter because what they said was the trial court didn't abuse its discretion and the Brady evidence didn't undermine the confidence in the outcome of the trial. Well, if you look at what Smith 1 said, Smith 1 made a determination facing the same issue, same parties, same facts, same records. I would just go back to Judge Sutton's point earlier that that was looking at de novo and now we're supposed to, I mean, you concede we would apply, statutorily we have to apply ed pedeference or assuming this set of facts, we would apply ed pedeference. You're saying that's superseded by a prior decision that applied a different standard. Well, what I'm saying is the court was looking at it de novo correct in Smith 1, but they made that finding. And when you take that finding, which is on the same record, same issues, same facts, yes, it was a different standard of review, but they made that finding. The Brady evidence undermines the confidence. But just so we're on the same page, the findings you're talking about are about materiality, right? That's the difference making or not when it comes to the lab notes. Correct. And the astonishing thing about AEDPA is that you can have two reasonable decisions about materiality which are opposite. That's the astonishing thing about AEDPA. And so, oddly enough, a panel of this circuit could reasonably look at this record and say it was material. But it would also be reasonable on this record potentially to say it's not. That's the whole amazing thing about AEDPA. I disagree with the court. You have to agree with me that you can have two reasonable approaches to evidence that come to opposite conclusions, one through AEDPA, one de novo, right? I agree with that. Not in this case, but that can happen. Correct. So I'm struggling with what's binding about the first panel decision when it's doing de novo. That's what I don't understand because it's all going to the same materiality question. Because those were ultimate findings that the court made about these same facts, the same facts that the appellant started talking about. You know, Dr. Heinegg said this and that, Chuck Allen and a prior attempt and all of these things. This court has hashed through those same facts and ultimately determined that the Brady evidence undermined the confidence in the outcome of the verdict. And now if you take that as a given and you are applying the AEDPA standard here and now and you say look at the first district decision or the state court, either one, and you say can a fair-minded jurist find that the ruling that we're looking at, whether it's first district or the state court, was consistent with Brady when we have to accept as a given that the Brady evidence undermined the confidence in the trial? Of course that's inconsistent with Brady. A fair-minded jurist couldn't conclude otherwise. And that's what, again, the Sixth Circuit gave us in Smith I these dots and now we're connecting them. And whether we're applying AEDPA review now, regardless of whether it's to the first district decision or the state court decision, there are these specific findings by Smith I that do constitute the law of the case because it's the same facts, it's the same part. But this feels like to me as a district court applying to NOVA review to something, just pick any issue, they appeal to us and we say that's the wrong standard, it should be a more deferential standard on the issue, maybe it's an administrative ruling or something, and it goes back to the district court and they apply the different standard that we've told them to apply and they're not hemmed in by their first decision where they applied a different standard. I realize this is our own court, but it was just an entirely different context. I see what you're getting at, but even though there was a de NOVA review being applied in Smith I and potentially AEDPA review being applied here, ultimately it doesn't matter when you take those points as a given. And if you look at what the southern district did here, they did apply AEDPA deference to the state court decision, not the first district. I think if you are taking the approach that something is due deference and you don't take the approach that the magistrate judge did in the report and recommendations. So you're saying it would be unreasonable for us to disagree with the points, the five points that the first panel. That's correct. And the evidence, just to cut the chase a little bit, the evidence suggests maybe that the other individual was involved in some robberies, but it doesn't exclude your client from being involved in this robbery or any others. It sweeps in, it maybe includes someone else in the criminality, but it doesn't do anything to exclude. That's a good point, Mr. Governor, because if you look at reasonableness here and you look at the prior court decisions, and like I said, the southern district did apply AEDPA deference to the state court trial decision independently, and they concluded that it was contrary to Brady by applying the wrong materiality standard and the confidence in the outcome of the verdict was undermined. That was using the state trial court decision. Looking at the state trial court decision. And there was an unreasonable determination of the facts. But if we look at the state court appeals determination, then that changes the analysis a bit. Not really, because they also discussed did the trial court abuse its discretion and was the confidence in the verdict undermined. And, of course, yes it was if you look at the analysis in Smith 1, which the southern district ultimately adopted. You know, the state says that our case law and case law in general allows for this idea that even though the state court decision is about ineffective assistance, in the course of their analysis they can make a ruling that goes to the underlying claim, i.e. Brady. Do you challenge that concept? In general, I do not. Here, because we'd be looking at Rule 26B, I do. Because I think that's very different from other analogous situations. Because it has the two steps and all that? Not just the two steps, but there is a specific procedure there which would require the prior appellate decision to be vacated, which clearly didn't happen here. But also, I think it's very important to look at Ohio's intention for the purpose of this rule and the Sixth Circuit precedent of how it was treated. I don't think, because I think potentially an analogous situation could be when plain error review is applied, and that's a procedural rule, but sometimes is the court really looking at an adjudication of the merits there? That could be seen as analogous, but here I do not think it is because I think Ohio clearly intends Rule 26B to not be giving adjudications on the merits. If you look at, not only is it a process outside of the appeal, there's no counsel provided, and there's no briefing on the merits. And if you look at the consequences of that, it really could open the floodgates, like this court discussed in Lot v. Coyle, of being able to sidestep the procedural default rule. And that's not an issue in plain error review, because who would bomb their trial to try to raise something that would be considered under plain error review, whereas all the motivations in the world exist to abuse Rule 26B if it's potentially an adjudication of the merits. So do you want to take a little time? You haven't had a chance to talk a little bit about the Rule 60 issue. Do you want to chat a little bit about that? Thank you, Your Honor, I would. The issue on the Rule 60B question comes down to core principles about the purpose of a writ of habeas corpus. There really aren't, the situation I would say is unprecedented, that there was an unconditional writ and the state refused to comply with the immediate and unconditional release order. There are situations where, well, I think to back up, because I see I'm actually out of time, the state here has actually conceded the issue on page 15 of their brief, where they said, yes, the events that happened after the unconditional writ was issued, but before the state complied with it, could be considered. And that's actually this precise question that's being asked here. And the district court was very explicit in saying if it could consider those circumstances, the court found it to be exigent circumstances. And the district court, of course, if you look at 2243, has the discretion to shape a remedy as law and justice requires. They should be able to consider that time frame as the state concedes in order to give teeth to an unconditional writ. Clearly the district court intended for Christopher to be out of custody because his life was in peril. The state went so far as to lying to state court judges to get an unlawful order to continue to hold him. And the federal court needs to be able to have teeth to their unconditional writs and be able to do something about it if there is extreme state misconduct as there was here. In refusing to comply with the very essence of the writ of habeas corpus, which is releasing the person from custody, which the state refused to comply with here. So if you accept that the state conceded that the event... You can't say that's always the norm, right? I mean, usually there's an appeal, for example. I'm sorry. Often there's an appeal, for example. Yeah, often there is an appeal. But here there was no appeal. The state didn't appeal that condition. And therefore they had to comply with it. And they simply defied not only the writ, but additional federal orders ordering his release. They simply wouldn't comply with it. They lied to a state court judge to get an unlawful order to consider holding him. And because the district court believed it couldn't consider the events after the unconditional writ was issued, but before it was complied with, they said there were exigent circumstances here, but we don't have jurisdiction to consider those. I argue that, yes, the court did have jurisdiction. And because exigent circumstances were found, a retrial should be barred, or at least remanded for the Southern District to consider. Okay, thank you. We'll hear rebuttal. Your Honors, I only have two points to make. First of all, my friend here is very focused on there being error. But AEDPA is a question of reasonableness. And the fact that two fair-minded jurors can come to different conclusions on something that is so fact-intensive and flexible, like materiality, is very clear here. Most of our time was spent on the law of the case point. So how do you read our prior decision, and what walls, if any, does that put up in terms of our review? Well, law of the case is not appropriate here because the context is different. In Smith 1, that was about cause and prejudice. It was a de novo review, so the legal standard is different. And by its own express terms, that's why a remand was necessary, to determine whether AEDPA deference attaches. And if so, how would this case fall out under AEDPA deference? So this court is not bound by the fact that Smith 1 did find error but did not apply. But the fact that it did not apply AEDPA deference is precisely the question that's before this court. How does this case shake out with deference? And second, I just want to point out once again that Rule 60B cannot be used as a vehicle to materially amend a prior judgment after the writ has been complied with. That is simply a bright-line rule that has been established in Gillespie, in Satterley, in Gertz, and it's what Mr. Smith seeks, and it's what Mr. Smith cannot get. If there are no further questions, I thank the court for its time. Okay, thanks to both of you for your helpful written submissions and oral arguments. We're always grateful and for answering our questions. And Ms. Berry, thank you for your work as court appointed counsel. It's really important to the system, and you've done a terrific job on behalf of Mr. Smith. So thank you very much. Thank you. Appreciate it. The case will be submitted.